## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | * | **NO. 2:20-CR-00065** |
| | * | |
| **VERSUS** | * | |
| | * | |
| **ASHTON J. RYAN, JR.** | * | **JUDGE ELDON E. FALLON** |
| **WILLIAM J. BURNELL** | * | |
| **ROBERT B. CALLOWAY** | * | |
| **FRANK J. ADOLPH** | * | |
| **FRED V. BEEBE,** | * | **MAG. KAREN WELLS ROBY** |
| | * | |
| **Defendants.** | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

### REPLY REGARDING MOTION AND INCORPORATED MEMORANDUM TO INTERVENE OR, ALTERNATIVELY, TO APPEAR AND PARTICIPATE AS *AMICUS CURIAE* BY THE CLERK OF COURT AND HER DEPUTIES FOR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

The Clerk of Court and her Deputies for the United States District Court for the Eastern District of Louisiana (the "Clerk's Office"), through undersigned counsel, respectfully submits this Reply Regarding its Motion To Intervene or, Alternatively, To Appear and Participate As *Amicus Curiae*, filed on February 10, 2021 (the "Motion to Intervene").[1]  As discussed below, the arguments raised by the Government in its Opposition to the Motion to Intervene[2] indicate that it misunderstands and misperceives the very limited, singular purpose of the Motion to Intervene – to  provide a permissible means for the Clerk's Office to submit factual information relating to the manner in which it executed the Jury Plan to summon jurors for service in the Eastern District of Louisiana incident to the 2017 Master Jury Wheel, while maintaining absolute

---

[1] Rec. Doc. No. 103.
[2] *See* Rec. Doc. No. 122 (the "Opposition").

neutrality in the litigation. Many of the Government's assertions, such as its claim that a "conflict" exists with the limited participation of the Clerk's Office on the narrow issue before the Court, are devoid of any supporting jurisprudence. Indeed, as detailed below, the fact that clerks from around the country routinely participate, in a number of contexts (including by filing briefs), in similar jury selection process challenges, underscores the appropriate nature of the Clerk's Office's request here. Further, despite the Government's claim that the participation of the Clerk's Office is "unnecessary," it is the respective positions of the parties here that *compels* the participation of the Clerk's Office to provide relevant and critical factual information to aid the Court in making a decision on the pending challenges. In particular, the Government inexplicably fails to provide any information to the Court about the processes and procedures by which jurors are summoned for service in the Eastern District of Louisiana or to address, in any material way, certain statistical arguments asserted by the defendants in their jury selection challenges (a position contrary to what that same U.S. Attorney's Office has staked out in prior jury selection challenges). Without participation by the Clerk's Office, certain information and data, directly pertinent to the jury selection challenge lodged by the defendants here, will not be provided to the Court, and an incomplete and inaccurate record on this important issue will thus be created.

In sum, the Clerk's Office simply seeks to supply the Court – in whatever form the Court deems appropriate[3] – with accurate and complete factual information to assist in adjudicating the issues before it; nothing more, nothing less.[4]

---

[3] As noted below, the Clerk's Office sought to formally intervene for the very limited purpose described in its Motion to Intervene and in this reply brief. However, to avoid even the suggestion of a conflict and to recognize that formal intervention may not be desirable, it will withdraw its request for intervention. Participation via brief, *amicus* or otherwise, or memorandum with attachments, is warranted.

[4] Defendant Calloway has also opposed the request for participation by the Clerk's Office. *See* Rec. Doc. No. 107.

I.     INTRODUCTION, BACKGROUND, AND SUMMARY OF ARGUMENT

At several points throughout its Opposition, the Government concedes that the Clerk's Office can submit the information it possesses – information that goes to the heart of the issues presented by the defendants' Motions to Dismiss[5] – to the Court; the Government just complains about the *mechanism* by which the Clerk's Office proposes to do this.[6] Unfortunately, it is the unusual position of the Government in connection with the pending jury selection challenge that requires the Clerk's Office's participation. Some background is in order.

Challenges to jury selection processes are not unique; indeed, there have been *hundreds* of such challenges across the country over the course of the last several decades – including multiple challenges in every federal district court in Louisiana.[7] In these cases, a pattern often emerges. The defendants typically lodge challenges to the jury selection process employed by the clerk's offices, arguing the three-part *Duren* test: that (i) a "distinctive group in the community" is (ii) statistically underrepresented in jury venires in comparison to its community population, in a way that (iii) results in "systemic exclusion" from the jury selection processes,

---

However, his grounds for opposing are not substantive; he simply opposes the request because defendant Calloway believes the matter should be litigated before the Hon. Barry W. Ashe in *United States v. Age*, No. 2:16-CR-32 (E.D. La. 2016), and no participation by the Clerk's Office in this case is needed in light of the parallel proceeding. *See id.*; *see also* Rec. Doc. No. 123 (noting this Court's deferral to the evidentiary record to be created before Judge Ashe in *Age*). While true, the Clerk's Office still requests the ability to participate in this case for the limited purpose of filing whatever brief it may be permitted to file in the *Age* case to ensure a complete record. No other defendant in this matter submitted an opposition.

[5] *See* Rec. Doc. No. 62 (Defendant Calloway's Motion and Incorporated Memorandum to Dismiss and Stay Proceedings due to Jury Selection Violation); *see also* Rec. Doc. Nos. 63, 66, 76, and 95.

[6] *See* Opposition at pp. 2 (suggesting that the Clerk's Office may provide information through "proper channels within the hierarchy of this Court…"), 8 (referencing the fact that the Clerk's Office may wish to generate a report on the jury selection process), 9 (claiming that the Clerk's Office "can make its voice heard" including by discussing the issues with the press; suggesting that the Clerk's Office can "submit an internal letter or report" to the Court, who can then decide whether to disclose that report), and 17 (suggesting that the Clerk's Office "submit the information it has to the Court internally").

[7] *See infra*, Part II.B.

3

resulting in a constitutional violation.[8]  In most of these cases, the Government seeks to defend the jury selection processes utilized by the clerk's office by culling through the applicable juror and jury selection process information and data to argue that such processes do not result in legal violations.  In particular, the United States *routinely* gathers statistical evidence to argue (sometimes with the help of an expert) that the second prong of the *Duren* test (statistical disparity resulting in underrepresentation) is not met,[9] *as well as* asserting that, even if a disparity is present, the jury selection process at issue does not result in systemic exclusion of the distinctive group at issue (the third prong of the *Duren* test).  And, in many of these challenges, far from creating some undefined "conflict," the clerk's office is intimately involved – in one form or the other – including by providing documents, testimony, or submitting briefs pertinent to the issues before the court.[10]

The challenge in this case (and the other pending challenges in this District) has largely followed this pattern: the defendants here have argued (through adoption)[11] that the jury section process violates the applicable *Duren* test, asserting that a protected class of people have been statistically underrepresented in a way that amounts to systemic exclusion.[12]  The Government has opposed this challenge.[13]  But here is the rub: the Government has decided <u>not</u> to challenge the defendants' conclusions as they pertain to the applicable statistical evidence, choosing instead to rest its argument solely on the third prong of the *Duren* test (systemic exclusion).[14]

---

[8] *See Duren v. Missouri*, 439 U.S. 357 (1979).
[9] *See infra*, Part II.B. (and authorities cited therein).
[10] *See id.*
[11] *See* Rec. Doc. No. 62 at p. 1 (Motion to Dismiss by defendant Robert Calloway, requesting the Court to defer ruling on issue in light of *United States v. Age, et al.*, No. 2:16-CR-32 (E.D. La. 2016), and attaching motion and materials from *Age* case); *see also* Rec. Doc. Nos. 63, 66, 76 and 95.
[12] *See id.*
[13] *See* Rec. Doc. No. 93 (Government's Opposition to Motion to Quash Indictment).
[14] *See id.* at pp. 5-11 (noting that, while the Government cannot stipulate to the defendants' conclusions concerning the statistical data, it does not challenge those statistics for purposes of the Motion to Quash).

*And that position is precisely why submission of factual data regarding the jury summoning process by the Clerk's Office in this matter is needed.*  If left unrebutted – which the Government apparently seeks to do[15] – the defendants' statistical information (some of which, without context, is inaccurate or misleading), and their conclusions drawn from that information (most of which, without appropriate context, are unsupportable), will be the *only* information in the record concerning the jury selection process utilized by the Clerk's Office, and statistical data associated therewith.  It is even more concerning that the Government has taken this position here because, in prior jury selection challenges, the U.S. Attorney's Office for the Eastern District of Louisiana *has* rebutted the statistical evidence put forth by defendants.[16]  Its current position leaves this Court with a void of information to review in determining this important issue.

To be sure, the Clerk's Office is a neutral entity; it has no interest in the outcome of this criminal proceeding, or the guilt or innocence of the defendants.  Its only interest is ensuring that the Court has accurate and fulsome information concerning its jury selection processes and the statistical data associated with same.  And, right now, it does not; and, without the participation of the Clerk's Office in the submission of factual information relevant to the issues, it will not.  In view of these unique circumstances, it should be permitted to do so, in whatever format the Court deems appropriate.

---

[15] The Government's Opposition to the Motion to Quash specifically notes that the defendants' statistical data is "untested" and to do would require analysis of the underlying data with the assistance of an expert.  *See* Rec. Doc. No. 93 at p. 10.  Though the U.S. Attorney's Office in this District has done this in the past, *see infra*, Part II.B., there is no indication in the record that the Government here desires to review the underlying data and engage expert testimony to challenge these statistics.

[16] *See infra*, Part II.B.

5

## II. THE CLERK'S OFFICE SHOULD BE PERMITTED LIMITED PARTICIPATION ON THE SINGULAR ISSUE PRESENTED BY THE DEFENDANTS' CHALLENGES TO THE JURY SELECTION PROCESS.

### A. The Clerk's Office Is Willing To Withdraw Its Request For Formal Intervention.

The Clerk's Office recognizes that formal intervention in a criminal proceeding is only reserved for the rarest of circumstances. Here, as briefed in the Motion to Intervene, the Clerk's Office believes in good faith it has a "legitimate interest" in the singular issue before the Court that could be addressed by intervention in a very limited and non-adversarial capacity.[17] In view of the applicable precedent and the rare circumstances where this mechanism is appropriate for a criminal case, the Clerk's Office recognizes formal intervention may not be the best method to address the singular, narrow issue present before the Court concerning the jury selection challenge. Thus, although brought in good faith on a narrow basis, the Clerk's Office withdraws its request for formal intervention.

### B. The Court Should Permit The Clerk's Office To Submit A Brief – *Amicus* Or Otherwise – So As To Provide A Complete Record Before The Court On The Defendants' Jury Selection Challenges.

The withdrawal of the formal intervention request by the Clerk's Office, however, does not end the issue. More applicable, and perhaps more appropriate, is its request to participate via an *amicus* brief – or, quite frankly, through the filing of *any* brief or memorandum permitted by the Court. As previously discussed, the Court has wide discretion to allow a non-party to submit a brief on a particular issue, requiring only that the Court find the information requested to be presented be "useful or otherwise desirable."[18] Certainly, in view of the unique circumstances

---

[17] *See* Rec. Doc. No. 103 (Motion to Intervene) at pp. 5-6.
[18] *See* Rec. Doc. No. 103 (Motion to Intervene) at p. 7 (citing cases).

here,[19] the Clerk's Office's request to present this information satisfies this low bar. In other words, the Clerk's Office merely wishes to "assist the [Court] by presenting . . . facts [and] data that are not to be found in the parties' briefs."[20]

As noted above, jury selection challenges are not unique; they have been lodged over and over again, across the country, for decades. Indeed, in every federal district in this State, the U.S. Attorney's Office – including the U.S. Attorney's Office for the Eastern District of Louisiana – has combated prior jury selection challenges by reviewing the pertinent data and arguing that the defendants failed to meet *Duren*'s second prong (in addition to asserting other arguments). Just fifteen years ago, for example, in *United States v. Caldwell*, 2:06-CR-00023 (E.D. La. 2006), a defendant lodged a challenge to this District's jury selection processes, arguing that African-Americans were substantially underrepresented in jury venires.[21] In response, the Government argued at length that the defendant failed to establish both the second and third prongs of the *Duren* test.[22] In so doing, the Government hired a statistical expert and provided lengthy factual information and argument concerning the defendant's claims as to statistical disparity.[23] Judge Engelhardt, the presiding judge in the *Caldwell* case, held a hearing on the issue and ultimately denied the defendant's motion.[24] *Caldwell* is not an outlier; the

---

[19] *See* Rec. Doc. No. 93 at pp. 5-11.
[20] *Voices for Choices v. Ill. Bell Telephone Co.*, 339 F.3d 542, 545 (7th Cir. 2003) ("No matter who a would-be amicus curiae is, therefore, the criterion for deciding whether to permit the filing of an amicus brief should be the same: whether the brief will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs.").
[21] *See United States v. Caldwell*, No. 2:06-CR-00023 (E.D. La. 2006) (ECF No. 75 – Defendant's Motion to Quash Jury Venire).
[22] *See id.* (ECF No. 77 – Government's Memorandum in Opposition to Defendant's Motion to Quash Jury Venire and for Stay) at pp. 8-19 (arguing, based on statistical evidence, that defendant failed to meet *Duren*'s second prong).
[23] *See id.* (ECF No. 77) at pp. 8-19; ECF. No. 77-1 at pp. 25-46 (Government's Expert Report).
[24] *See id.* (ECF No. 80).

Government has opposed other jury selection challenges in this District, regularly making arguments that defendants fail *Duren*'s second prong.[25]

The same holds true for jury selection challenges in the Middle District of Louisiana. For example, in *United States v. Edwards*, 72 F. Supp. 2d 668 (M.D. La. 1999), the defendants lodged a similar challenge to the grand jury selection process utilized by that district. In *Edwards*, the Government – again represented by the same U.S. Attorney's Office present here[26] – made several arguments to combat this challenge, including that the statistical data proffered by the defendants did not show a Sixth Amendment violation.[27] Ultimately, the Court denied the defendants' claims, finding that they failed to satisfy the second and third prongs of *Duren*.[28]

Challenges in the Western District of Louisiana follow the same pattern. In *United States v. Sanders*, No. 10-00351, 2014 WL 2600340 (W.D. La. June 9, 2014), for example, a district court was confronted with a similar challenge to that district's jury selection process. The Government opposed the defendant's challenge, arguing that the statistics utilized by the defendant failed to satisfy the second prong of the *Duren* test, and likewise asserting that the defendant also failed to satisfy the third prong.[29] The court in *Sanders* agreed, finding that the defendant failed to satisfy the second and third prongs of *Duren*.[30] Unsurprisingly, this model is

---

[25] *See United States v. Haynes*, No. 2:05-CR-00308 (E.D. La. 2005) (ECF No. 29 – Government's Memorandum in Opposition to Defendant's Motion to Quash Jury Venire and for Stay at pp. 15-25) (arguing defendant failed to satisfy statistical underrepresentation under *Duren*); *United States v. Jones*, No. 2:05-CR-00231 (E.D. La. 2005) (ECF No. 30 – Government's Memorandum in Opposition to Defendant's Motion to Quash Jury Venire at pp. 14-20) (same); *United States v. Dixon*, No. 2:05-CR-000209 (E.D. La. 2005) (ECF No. 29 – Government's Memorandum in Opposition to Defendant's Motion to Quash Jury Venire at pp. 14-20) (same).

[26] *See United States v. Edwards*, No. 98-CR-165 (M.D. La. 1998) (Docket sheet noting Government as being represented by U.S. Attorney's Office for the Eastern District of Louisiana).

[27] *See United States v. Edwards*, 72 F. Supp. 2d 668, 674 (M.D. La. 1999).

[28] *Id.* at 679-80.

[29] *See* Response of the United States to Defendant's Motion to Dismiss the Indictment Due to the Systematic Exclusion of African-Americans from the Grand Jury Venire, *United States v. Sanders*, No. 10-CR-00351 (W.D. La. Sept. 19, 2013), 2013 WL 9543586 (ECF No. 150 at pp. 6-8).

[30] *See Sanders*, 2014 WL 2600340, at *3-4.

not unique to Louisiana; indeed, across the country, the Department of Justice routinely lodges such arguments in response to jury selection challenges, including through the use of statistical experts.[31]

On many occasions, including in this District, the Clerk's Office is tasked with supplying documents and data to the parties or the Court,[32] as well as potentially having some of its employees testify at any ordered hearing.[33] Particularly instructive here is *United States v. Barlow*, 732 F. Supp. 2d 1 (E.D.N.Y. 2010). In *Barlow*, after conviction, the defendant sought a new trial on numerous grounds, including lodging a jury selection challenge, alleging that the jury selection process utilized in that district systematically discriminated against African-American males.[34] The Government opposed Barlow's challenge, arguing that he failed to meet

---

[31] *See, e.g. United States v. Smith*, 457 F. Supp. 3d 734, 740-43 (D. Alaska 2020) (denying jury selection challenge in part based on defendant's failure to satisfy *Duren*'s second prong) & *United States v. Smith*, No. 3:16-CR-00086 (D. Alaska 2016) (ECF No. 547 – United States' Response in Opposition to Defendant's Motion to Dismiss the Superseding Indictment at pp. 6-8, 10-12) (arguing statistical evidence and measurements in connection with jury selection challenge)); *United States v. Barnes*, 520 F. Supp. 2d 510, 514-16 (S.D.N.Y. 2007) (denying jury selection challenge in part based on statistical measurement of representation and the alleged underrepresentation of distinctive group at issue) & *United States v. Barnes*, No. 1:04-CR-00186 (S.D.N.Y. 2004) (ECF No. 294 – Government's Memorandum in Opposition to Defendant's Motion to Stay Proceedings at pp. 7-17 (arguing that defendant failed to satisfy *Duren*'s second prong)); *United States v. Scrushy*, No. 2:05-CR-1119, 2007 WL 1296000, at *4, *28-33 (M.D. Ala. May 1, 2007) (Magistrate Report & Recommendation denying defendants' jury selection challenge on, among other things, a failure to satisfy *Duren*'s second prong; also noting the testimony of statistical expert employed by United States in connection with same) & *United States v. Scrushy*, No. 2:05-CR-00119 (M.D. Ala. 2005) (ECF No. 114 – United States' Response in Opposition to Defendants' Motion to Dismiss (arguing *Duren's* second prong was not met by defendants' challenge)).

[32] *See, e.g., United States v. Jones*, No. 2:05-CR-00231 (E.D. La. 2006) (ECF No. 29 (ordering Clerk of Court to disclose jury selection information to defense counsel)); *United States v. Dixon*, No. 2:05-CR-00209 (E.D. La. 2006) (ECF No. 28 (ordering that Clerk of Court was authorized to disclose jury selection process information pursuant to Chief Judge Helen Berrigan's formal "Memorandum to Clerk" authorizing same)); *United States v. Barlow*, No. 1:09-CR-00580 (E.D.N.Y) (ECF No. 78 (directing Clerk of Court to provide defense counsel and the government with race and gender statistics for venires drawn from master jury wheel)); *United States v. Valenzuela*, No. 8:05-CR-0107 (C.D. Ca. 2012) (ECF NO. 1188 (ordering Clerk's Office to provide discovery related to district's jury venire pool)).

[33] *See, e.g., United States v. Gallegos*, 108 F.3d 1272, 1276 (10th Cir. 1997) (noting that jury administrator for the Clerk's Office testified regarding the jury selection process at evidentiary hearing); *United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1231 (10th Cir. 1997) (same); *United States v. Klein*, No. 05-CR-056, 2007 WL 9735904, *1 (S.D. Tex. March 9, 2007) (noting several members of the Clerk's Office testified at evidentiary hearing regarding challenge to jury selection process); *United States v. Anthony*, 138 Fed. Appx. 591, 593 (4th Cir. 2005) (noting Clerk of Court testified regarding jury selection plan during *in camera* hearing).

[34] *See United States v. Barlow*, 723 F. Supp. 2d 1, 3 (E.D.N.Y. 2010).

all three prongs of the *Duren* test.[35] Several weeks later, the Clerk of Court himself submitted his own memorandum on the public docket concerning the defendant's request in *Barlow*, justifying his participation as follows:

> In my capacity as Clerk of Court for the Eastern District of New York, I respectfully submit this response which takes strong exception to the characterizations made in defendant's reply memorandum of law [regarding his request for new trial] that the Jury Department has violated the Sixth Amendment and systemically excluded black males from the jury selection process.
>
> No position is taken with regard to the defendant's motion for a new trial. The Clerk of Court is always a neutral party regarding pending legal matters before the Court. However, where the Clerk's Office is alleged to have participated in systematic exclusion of jurors and the defendant's memorandum of law makes bald assertions of "an illegal practice" which allegedly violates "the court's Jury Plan and the Sixth Amendment" [it] is my obligation to challenge those claims.[36]

The Clerk's January 2010 memorandum went on to challenge the defendant's arguments, including his statistical information and conclusions drawn therefrom.[37] It appears a hearing with legal argument was then held by the district court, with supplemental submissions made by the entities at issue – including <u>two</u> additional submissions by the Clerk of Court addressing some of the statistical issues present with the defendant's jury selection challenge.[38] Several months after the hearing and the supplemental submissions, the district court denied the defendant's motion for new trial, finding that the defendant failed to satisfy the second and third prongs of the *Duren* test.[39] It is important to note that, unlike the United States here, the Government in *Barlow* challenged the defendant's claims under the statistical evidence prong of

---

[35] *See United States v. Barlow*, No. 1:09-CR-00580 (E.D.N.Y. 2010) (ECF No. 65 – Government's Opposition to Defendant's Motion for New Trial) at pp. 42-63.
[36] *See id.* (ECF No. 71 – Clerk of Court Memorandum dated Jan. 19, 2020) (alterations not in original) (attached as Exhibit A).
[37] *See id.*
[38] *See id.* (ECF Nos. 77 [Clerk of Court Memorandum dated Apr. 5, 2010] & 84 [Clerk of Court Memorandum dated Apr. 26, 2010]).
[39] *See Barlow*, 732 F. Supp. 2d at 22-42.

*Duren* (arguably mooting the need for the Clerk of Court to participate). Nonetheless, the Clerk of Court in *Barlow*, whose actions came under direct attack there (as they are here), felt compelled to provide the Court with accurate and fulsome statistical information – and the Court permitted such filings (with no claim of a "conflict").

As noted above, the Government here has chosen not to present evidence concerning jury summoning procedures or challenge the defendants' statistical evidence and conclusions from that evidence (second prong of *Duren*).[40] This puts the Clerk's Office in an awkward and difficult position; it is in possession of pertinent data that could assist the Court but lacks an adequate mechanism (without Court permission)[41] to provide this information to the Court adjudicating this issue – and, surprisingly, the Government opposes the Clerk's Office's request to do so.

The vigor with which the Government opposes even very limited participation by the Clerk's Office can leave no doubt that the Clerk's Office is neutral in this litigation, as it is in all cases filed in the Eastern District of Louisiana; it does not desire to be an advocate in connection with this (or any other) motion. However, the allegations raised by the defendants in the pending motion to dismiss the indictment and stay proceeding are serious, may have wide-ranging consequences, and go to the core of the responsibilities and duties of the Clerk's Office. As with prior jury selection challenges, the Court certainly has an interest in ensuring a fulsome and complete record concerning its review of this issue, including the appropriate statistical data and expert conclusions to be drawn from same. This is particularly true given that such a record may be reviewed on appeal. For purposes of having a complete and accurate record, the Clerk's

---

[40] *See* Rec. Doc. No. 93 at pp. 5-11.
[41] As noted above, the Clerk of Court in *Barlow* simply filed three memoranda in the record concerning the defendant's jury selection challenge in that case, seemingly without Court permission. The Clerk's Office thought it wiser to request permission before doing so here.

11

Office should be permitted to supply this information, on the public docket, as the Court adjudicates this issue. And that is all the Clerk's Office is requesting – limited participation to provide the Court with all accurate information on this single, narrow issue.

### C. The Clerk's Office's Request For Limited Participation Does Not Pose A Conflict.

At several points in the Opposition, the Government argues that permitting the Clerk's Office to participate would create a "conflict of interest" because it operates within the judicial branch.[42] The Government surmises that the Clerk's Office cannot participate and provide factual information to the Court while also having employees "work as case managers and administrators on this and other criminal matters."[43] Citing this singular issue, the Government concludes that a "universe of problems" is raised.[44]

For example, the Government suggests that allowing limited participation by the Clerk's Office will be subject to discovery requests by the defendants and/or the Government. Prior to the recent filing, in quick succession, of four motions challenging the jury selection processes in the Eastern District of Louisiana,[45] the Clerk's Office was subject to and complied with a voluminous discovery request, upon order of the Court, in *United States v. Age*, Case No. 2:16-CR-32 (E.D. La. 2016), as confirmed by defendant Age's counsel, Richard Bourke, in his

---

[42] *See* Opposition at pp. 2, 9, and 16.
[43] *Id.* at p. 9.
[44] *Id.*
[45] *United States v. Age, Jr., et al.,* No. 2:16-CR-32 (E.D. La. 2016) (Rec. Doc. Nos. 483 (by defendant Louis Age, Jr.), 484 (by defendant Ronald Wilson, Jr.), 485 (by defendant Kendrick Johnson), Rec. Doc. 487 (by defendant Stanton Guillory)); *United States v. Williams, et al.*, No. 2:20-CR-55 (E.D. La. 2020) (Rec. Doc. No. 111 (by defendants Jason Williams and Nicole Burdett)); *United States v. Hamdan, et al.*, No. 2:19-CR-60 (E.D. La. 2019) (Rec. Doc. No. 284 (by defendants Imad Faiez Hamdan and Ziad Mousa)); and in the instant case, *United States v. Ryan, et al.*, No. 2:20-CR-65 (E.D. La. 2020) (Rec. Doc. 62 by defendant Robert Calloway), 63 (by defendant William J. Burnell), 66 (by defendant Frank J. Adolph), 76 (by defendant Ashton J. Ryan, Jr.), and 95 (by defendant Fred V. Beebe)).

declaration in *Age*[46] and in the instant case.[47] Bourke states that he received "from the Eastern District of Louisiana (EDLA) jury administrator 75 electronic files, make up of 166,669 pages of PDF documents, 6 Excel spreadsheets and 1 Word document," along with a 24-page transmittal letter and a hard copy of the entire or the first page of each of the documents provided electronically.[48] In the memorandum in support of Age's First Motion to Quash the Indictment and Stay Proceedings, fully relied upon in the instant case as the basis of the defendants' Motion to Dismiss Indictment and Stay Proceedings Due to Jury Selection Violations,[49] Age's counsel indicates that he "intends to request production of additional data and its production in the correct electronic format."[50] Thus, whether or not the Clerk's Office is provided an opportunity to file a brief of some type, it is already subject to the requirement to provide responses to requests for jury information; this has not and does not create a conflict.[51]

Notably absent from the Government's Opposition is any jurisprudence suggesting that permitting limited participation by the Clerk's Office to simply provide factual information (and thus a complete record) on the jury selection issue is a conflict. And, indeed, the plethora of cases involving jury selection challenges (some of which are discussed above) where clerks' offices have participated – in a myriad of forms, including providing documents, testifying, and/or filing briefs – suggests there is no conflict. This supposed conflict has not surfaced in

---

[46] *See United States v. Age, Jr., et al.*, No. 2:16-CR-32 (Rec. Doc. No. 483-2, p. 1).
[47] *See* Rec. Doc. No. 62-1 (Declaration attached thereto).
[48] *See id.*
[49] *See id.*
[50] *See id.* at p. 23.
[51] Clerk's Office employees, of course, are subject to orders of the court relating to the providing of information in jury challenge motions such as the present one. As noted previously, such motions in four cases were filed in a relatively short period of time, with the possibility of additional motions to be filed in the future. The compilation of jury information in response to Age's request was a substantial and lengthy undertaking. Because of the expectation of additional jury discovery requests and the possibility of one or more evidentiary hearings concerning these motions, and in seeking to remain neutral and transparent in the transmission of information relating to these requests, the Clerk's Office retained counsel to avoid communicating directly with counsel for any party regarding these motions, discovery requests, and hearings.

these prior legal proceedings for a simple reason: it simply is not a conflict for the Clerk's Office to participate in this matter by neutrally presenting data to the Court, in the limited fashion on the narrow issue at hand. This is particularly so where, as here, the Court may well be left with an incomplete, inaccurate, and distorted record without its limited participation.[52]

### IV. THE ALTERNATIVES PROPOSED BY THE GOVERNMENT SHOULD BE REJECTED.

One final issue: at several points in its Opposition, the Government suggests alternatives for the Clerk's Office should it desire to participate, asserting that the Clerk's Office can "submit an internal letter or report," through "proper channels" within "the hierarchy of this Court."[53] The Clerk's Office is unsure what "proper channels" the Government is referring to but finds it inappropriate to submit *ex parte* information to the Court as it adjudicates the instant Constitutional issue.

### V. CONCLUSION

WHEREFORE, for the foregoing reasons, and those set forth in the Motion to Intervene, the Clerk's Office and her Deputies for the United States District Court for the Eastern District of Louisiana respectfully requests that the Court (a) permit it to participate as *amicus curiae* or otherwise for the limited purpose discussed above and set forth in the Motion to Intervene; and (b) grant such additional relief as the Court deems appropriate.

---

[52] In a strange sentence, the Government complains that the Clerk's Office "does not address the potential conflict of interest that would result from its counsel's representation of non-Clerk's Office clients in this district, including several important witnesses in this case." Opposition at p. 9. There is no conflict with undersigned counsel representing the Clerk's Office nor has the Government pointed to any applicable legal basis for this supposed conflict. Indeed, the singular case it cites is wholly inapplicable as it involved defense counsel who concurrently represented two defendants in a single criminal trial (in other words, an actual conflict of interest). The Government's vague, undefined, and entirety unsubstantiated assertion should be disregarded.
[53] Opposition at p. 2.

Respectfully submitted,

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

BY:  */s/ Matthew S. Chester*
MATTHEW S. CHESTER (#36411)
KRISTEN L. HAYES (#36490)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000
mchester@bakerdonelson.com
klhayes@bakerdonelson.com

**ATTORNEYS FOR CLERK OF COURT AND HER DEPUTIES FOR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this, the 26th day of February, 2021, the foregoing pleading was filed with the Clerk of Court through the CM/ECF system, which will send notice of electronic filing to all counsel of record who have consented to electronic notification. Undersigned counsel has additionally emailed a copy of the foregoing pleading to counsel of record.

 */s/ Matthew S. Chester*
MATTHEW S. CHESTER