UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 20-65** |
| v. | * | **SECTION: "L"** |
| **ASHTON J. RYAN, JR.** | * | |
| **WILLIAM J. BURNELL** | | |
| **ROBERT B. CALLOWAY** | * | |
| **FRANK J. ADOLPH** | | |
| **FRED V. BEEBE** | * | |

\* \* \*

### NOTICE OF INTENT TO INTRODUCE EVIDENCE
### PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States of America, through the undersigned Assistant United States Attorneys, hereby notices its intent to introduce evidence related to acts committed by defendant Frank J. Adolph. The evidence described in this motion should be admitted because it is intrinsic to the crimes charged in the superseding indictment. *See* Rec. Doc. 65. Alternatively, the evidence should be admitted pursuant to Federal Rule of Evidence 404(b).

### FACTS AND PROCEDURAL HISTORY

In July 2020, a federal grand jury in the Eastern District of Louisiana charged Adolph in a 46-count indictment with, among other things, conspiracy to defraud First NBC Bank. Rec. Doc. 1. The indictment also charged three Bank officer defendants: the Bank's President, CEO, and Chairman of the Board, Ashton J. Ryan, Jr.; the Bank's Chief Credit Officer, William J. Burnell; and Executive Vice President and commercial relationship manager Robert B. Calloway. Rec. Doc. 1. In January 2021, the grand jury issued a 49-count superseding indictment charging Adolph, Ryan, Burnell, Calloway, and Senior Vice President and commercial relationship manager Fred V. Beebe. Rec. Doc. 65. One of the core allegations in the indictment

is that the Bank officer defendants conspired to hide the true status of several borrowers who were unable to pay their loans or cover their checks without receiving new loans from the Bank, and several of those borrowers participated in that conspiracy by providing fraudulent documents that made them seem more creditworthy than they were.

As alleged in the superseding indictment, *see* Rec. Doc. 65, pp. 14-16, Adolph was one such troubled borrower at the Bank, where he was a customer from August 2008 through April 2017. Ryan served as an approving officer on Adolph's loans, while Burnell approved the loans' credit risk ratings. Adolph's creditworthiness was based, at least in part, on accounts receivable belonging to his factoring business, Metro Rediscount.[1] Adolph periodically submitted certificates to the Bank listing Metro Rediscount's accounts receivable, and those certificates were included in loan documents to support Adolph's loans. Generally, Adolph's strength as a Bank borrower depended on the amount of accounts receivable he expected to collect through Metro Rediscount. If Adolph included accounts receivable on the certificate that he did not actually expect to collect, anyone relying on the certificate would believe he was more creditworthy than he truly was.

In August 2013, a loan officer who worked on Adolph's loans hired an external auditor to audit Metro Rediscount's accounts receivable. After conducting an investigation into Metro Rediscount and interviewing Adolph, the auditor stated that she could not verify many of the accounts receivable Adolph listed as belonging to Metro Rediscount. Adolph's loan officer alerted Ryan and Burnell and warned them that Adolph was living beyond his means and could not pay his debt to the Bank. The loan officer also stated to Ryan and Burnell that he believed

---

[1] "Factoring" is the "buying of accounts receivable at a discount." Black's Law Dictionary (11th ed. 2019). "The price is discounted because the factor (who buys them) assumes the risk of delay in collection and loss on the accounts receivable." *Id.* The superseding indictment states that Adolph's company, Metro Rediscount, "bought other companies' accounts receivable." Rec. Doc. 65, ¶ 31.

Adolph was committing fraud. For example, in one December 2013 email to Ryan and Burnell, the loan officer said:

> It appears that over the past year [Adolph] has committed fraud. Receivables that we relied [on] did not exist or were collected and not reported or paid to us ([Adolph] has made no deposits [in] months) Our loss exposure due to fraud is between $1.5 and $2 [million]. Please advise how to proceed.

In a February 2014 email to Ryan and Burnell, the loan officer similarly stated:

> Based on our audit, I do suspect fraud. Several of our confirmations stated that they had not done business with Metro [Rediscount] in years, and one stated th[e]y had never done business with Metro. One client wanted their attorney to request our records as they wanted no association with Metro. I advised we were working from dated invoices.

Despite their knowledge of Adolph's fraud, Ryan and Burnell approved additional loans for Adolph and failed to notify the Bank's Board of Directors, external auditors from Ernst & Young, or examiners from the FDIC and the Louisiana Office of Financial Institutions. Between December 2013 and September 2015, Ryan and Burnell recommended, authorized, and approved approximately $5.8 million in new loans, renewals with increases, and consolidated loans to Adolph. Although the stated purpose of many of the loans was to finance the working capital needs of Metro Rediscount or to finance Metro Rediscount's accounts receivable, proceeds from the loans often went toward payments on Adolph's existing loans or to pay Adolph's overdrafts. Ryan and Burnell failed to disclose similar schemes to make loan payments or pay overdrafts with new loans for other borrowers, six of whom have pleaded guilty to bank fraud conspiracy.[2]

---

[2] *See United States v. Gibbs*, E.D. La. No. 20-60, Doc. 16 (Aug. 26, 2020) (Milazzo, J.); *United States v. Charity*, E.D. La. No. 19-90, Doc. 20 (July 30, 2019) (Africk, J.); *United States v. St. Angelo*, E.D. La. No. 19-55, Doc. 25 (June 28, 2019) (Barbier, J.); *United States v. Vira*, E.D. La. No. 20-53, Doc. 18 (Sept. 17, 2020) (Brown, J.); *United States v. Treme*, E.D. La. No. 20-62, Doc. 20 (Sept. 2, 2020) (Vance, J.); *United States v. Dunlap*, E.D. La. No. 18-99, Doc. 20 (Oct. 17, 2018) (Lemelle, J.).

The superseding indictment also alleges that at the same time that Adolph was submitting the fraudulent receivables, he also sent the Bank a forged account statement from another bank. Specifically, Adolph sent First NBC Bank a copy of a January 2015 bank statement from another bank, to give the impression that Adolph's company, Metro Rediscount, had additional income outside of First NBC Bank. However, the Metro Rediscount account at the other bank did not exist. *See* Rec. Doc. 65 pp. 14-15.

This is not Adolph's first criminal case in the Eastern District of Louisiana. In May 1998, this Court sentenced Adolph to five years' probation after he pleaded guilty to conspiracy to commit mail fraud and mail fraud. *See* Factual Basis, attached hereto as Government's Exhibit A-1; Judgment, attached hereto as Government's Exhibit A-2. Notably, Adolph's previous federal conviction involved his listing fraudulent assets on a company's financial statements "to create the false impression that [the company] was solvent," Gov. Ex. A-1, p. 2—conduct that is similar to the allegations in the instant superseding indictment. *See* Rec. Doc. 65, p. 15 ("[I]n a July 2014 loan document, Adolph submitted a certificate that falsely listed two companies as owing Metro Rediscount tens of thousands of dollars."). On documents Adolph submitted to the Bank to support his loans, he failed to disclose that he had the 1998 felony conviction.[3]

Additionally, Adolph has had multiple complaints made against him and arrests for issuing worthless checks:

---

[3] Adolph's 1998 conviction was filed under seal. In December 2020, this Court unsealed Adolph's judgment and factual basis in that case for the purpose of using them in the instant case. *See United States v. Adolph*, No. 96-153. Nothing prohibited Adolph from truthfully disclosing his own conviction, and nothing authorized him to lie to a bank about the existence of that conviction.

4

- In August 2014, the New Orleans Police Department arrested Adolph for writing a worthless check for $2,477.82. *See* August 2014 Documents, attached hereto as Government's Exhibit B.

- In October 2014, the St. Tammany Parish Sheriff's Office arrested Adolph for writing worthless checks for $2,400 and $3,600 to two horse racing and breeding companies. *See* October 2014 Documents, attached hereto as Government's Exhibit C. The $2,400 check was from Adolph's account at First NBC. *See* Gov. Ex. C, p. 12.

- In March 2015, the New Orleans Police Department arrested Adolph for writing a worthless check for $1,054. *See* March 2015 Documents, attached hereto as Government's Exhibit D.

- In July 2016, a tractor and equipment company filed an affidavit with St. Tammany Parish alleging that Adolph wrote a worthless check for $1545.05. *See* July 2016 Documents, attached hereto as Government's Exhibit E.

- In March 2017, a feed and seed company filed an affidavit with St. Tammany Parish alleging that Adolph wrote a worthless check for $62.28. *See* March 2017 Documents, attached hereto as Government's Exhibit F.

The District Attorney's Offices for Orleans Parish and St. Tammany Parish did not pursue the worthless check charges against Adolph following these arrests.

## LAW AND ARGUMENT

### I. Intrinsic Evidence

Ordinarily, Federal Rule of Evidence 404(b) dictates when evidence of "other bad acts" is admissible. However, Rule 404(b) does not apply to evidence that is intrinsic to the crime charged. *See United States v. Lockhart*, 844 F.3d 501, 512 (5th Cir. 2016) ("If the evidence is

5

intrinsic, it is not *other* bad acts evidence at all, but rather additional facts surrounding the charge at issue.") (emphasis in original). Evidence of bad acts is admissible and characterized as "intrinsic" when the bad acts and the crime charged are "inextricably intertwined," the bad acts and the crime charged were part of a "single criminal episode," or the bad acts were "necessary preliminar[ies]" to the crime charged. *United States v. Ceballos*, 789 F.3d 607, 620 (5th Cir. 2013). Such evidence "is admissible to complete the story of the crime by proving the immediate context of events in time and place . . . and to evaluate all of the circumstances under which the defendant acted[.]" *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (citation and quotation marks omitted). In a conspiracy, evidence is "intrinsic" if it is "relevant to establish how the conspiracy came about, how it was structured, and how the [defendant] became a member." *United States v. Watkins*, 591 F.3d 780, 784 (5th Cir. 2009).

Here, the superseding indictment alleges that the defendants "unjustly enriched themselves by disguising the true financial status of certain borrowers and their troubled loans in order to conceal the true financial condition of the Bank from the Board, auditors, and examiners." Rec. Doc. 65, p. 7. Whether Ryan, Burnell, and Adolph accurately described Adolph's creditworthiness on loan documents will be a major issue at trial. To "complete the story of the crime," *see Rice*, 607 F.3d at 141, the government will present evidence that (1) Adolph had a previous felony fraud conviction that he hid from First NBC Bank; (2) during the course of the crimes charged in the superseding indictment, Adolph was unable to pay his debts or cover his checks without obtaining new loans from First NBC Bank; and (3) this information was not disclosed in loan documents.

Further, the evidence this motion seeks to admit will help the jury understand "how the conspiracy came about" and "how [Adolph] became a member." *See Watkins*, 591 F.3d at 784.

6

Specifically, this evidence will demonstrate that Adolph failed to generate sufficient income to make his loan payments or pay for other expenses, so Ryan and Burnell funneled money to Adolph through fraudulent loans. This evidence "is not *other* bad acts evidence at all, but rather additional facts surrounding the charge at issue." *See Lockhart*, 844 F.3d at 512 (emphasis in original). As such, it is intrinsic, and it should be admitted.

## II.     Rule 404(b)

In the event the Court finds that any evidence of Adolph's prior fraud conviction or worthless checks is extrinsic, the evidence should be admitted under Federal Rule of Evidence 404(b). "Under Federal Rule of Evidence 404(b), evidence of a 'crime, wrong, or other act is not admissible to prove a person's character'; however, such evidence may be admissible 'for another purpose, such as showing motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *United States v. Juarez*, 866 F.3d 622, 626-27 (5th Cir. 2017) (quoting Fed. R. Evid. 404(b)(1)-(2)). The Fifth Circuit's test for admissibility "requires a determination that (1) the extrinsic offense evidence is relevant to an issue other than the defendant's character and (2) the evidence possesses probative value that is not substantially outweighed by its undue prejudice and meets the other requirements of Federal Rule of Evidence 403." *Id.* at 627 (quotation marks, brackets, and ellipsis omitted); *see also United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).

In this case, evidence of Adolph's criminal acts is relevant to an issue other than Adolph's character. The evidence will demonstrate Adolph's true lack of creditworthiness by establishing that he had a felony fraud conviction and that he could not pay his debts during the course of the charged crimes. It is also relevant to Adolph's motive for participating in the bank fraud because it will show that Adolph did not generate sufficient income on his own and that he

7

lived off loan proceeds. *See United States v. Kinchen*, 729 F.3d 466, 472 (5th Cir. 2013) (stating that evidence of other acts was admissible "where the actions help establish why the defendant wanted to commit the charged offense"). Moreover, "an uncharged offense is relevant to intent, a proper non-character issue under Rule 404(b), if it requires the same intent as the charged offense, because evidence of the uncharged offense then lessens the likelihood that the defendant committed the charged offense with innocent intent." *United States v. Smith*, 804 F.3d 724, 736 (5th Cir. 2015) (quotation marks omitted). The instant bank fraud charges, the 1998 fraud conviction, and the worthless check arrests all involve the same intent, *i.e.*, intent to defraud. *See* 18 U.S.C. § 1344 (bank fraud); 18 U.S.C. § 1341 (mail fraud); La. R.S. § 14:71 (issuing worthless checks).

As to the second step of the Rule 404(b) analysis, the Fifth Circuit considers four factors when analyzing whether evidence of other acts possesses probative value that is not substantially outweighed by its undue prejudice: "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *Smith*, 804 F.3d at 736; *see also Beechum*, 582 F.2d at 915. First, where, as here, a defendant enters a plea of not guilty in a conspiracy case, "the first prong of the *Beechum* test is satisfied." *United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009).

Second, the extrinsic and charged offenses are similar because they are all attempts by Adolph to misrepresent his financial status and defraud others. Indeed, both the 1998 conviction and the instant case involve Adolph's listing fraudulent assets on a company's financial statements. Adolph's worthless checks, like the bank fraud in the instant case, involve Adolph deceiving someone into believing that he was willing and able to pay them back. Just as each of

Adolph's checks amounted to a representation that his account had sufficient funds to cover it, the fraudulent receivables and forged bank statement in the instant case were similar representations to First NBC that Adolph was able to pay his loans with income from his business.

Third, the worthless checks occurred during the course of the crimes charged, so, at least for that evidence, the third *Beechum* prong is satisfied. That the 1998 conviction occurred ten years before Adolph's role in the charged conspiracy began is not dispositive; the Fifth Circuit has approved the admission of extrinsic acts that occurred "more than ten years" before the charged offense, *see United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996), and fifteen years before the charged offense. *See United States v. Chavez*, 119 F.3d 342, 347 (5th Cir. 1997). Adolph's five-year term of probation expired in 2003, five years before the time period alleged in the superseding indictment. *See* Gov. Ex. A-2 (1998 Judgment).

Finally, the Court can mitigate any prejudice by giving limiting instructions to the jury. The extrinsic offenses are not "of a heinous nature such as would incite a jury to an irrational decision on the charges before it." *See Cockrell*, 587 F.3d at 680 (quotation marks omitted). The jury will presumably follow the Court's instructions and consider the evidence appropriately. *See United States v. Reed*, 908 F.3d 102, 115 n.42 (5th Cir. 2018) ("We generally presume that juries follow trial court instructions.").

Thus, all of the *Beechum* factors weigh in favor of admitting evidence of Adolph's 1998 fraud conviction and evidence of his issuing worthless checks during the course of the crimes charged. Whether the evidence is intrinsic to the crimes charged or extrinsic under Rule 404(b), it should be admitted.

## CONCLUSION

For the foregoing reasons, evidence related to Frank J. Adolph's 1998 fraud conviction and evidence related to Adolph's issuing worthless checks should be admitted.

Respectfully submitted,

MICHAEL M. SIMPSON
Attorney for the United States
Acting Under the Authority Conferred
by 28 U.S.C. § 515

*/s/ Matthew R. Payne*
MATTHEW R. PAYNE
SHARAN E. LIEBERMAN
NICHOLAS D. MOSES
J. RYAN McLAREN
K. PAIGE O'HALE
Assistant United States Attorneys
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3081
E-Mail: matthew.payne@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to ECF-registered counsel of record

*/s/ Matthew R. Payne*
MATTHEW R. PAYNE
Assistant United States Attorney